NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4299
_____

IN RE: GARY L. REINERT, SR. et al.,
Debtors


METAL FOUNDATIONS ACQUISITION, LLC.


v.


GARY L. REINERT, SR.,
Appellant


_____


On Appeal from the District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-12-cv-01782)
District Judge: Honorable David S. Cercone
_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
January 16, 2015

Before: HARDIMAN, SCIRICA, and BARRY, Circuit Judges

(Filed: February 20, 2015)


_____


OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Defendant, Gary L. Reinert, Sr., appeals the District Court's affirmance of the Bankruptcy Court's order requiring Reinert to return certain converted assets to Plaintiff, Metal Foundations Acquisition, LLC ("MFA"). We will affirm.

## I.

A bankruptcy sale proceeding and a later conversion action are relevant to this appeal. In the bankruptcy sale proceeding, the United States Bankruptcy Court for the Western District of Pennsylvania approved the sale of the assets of various Reinert-controlled entities to MFA. Following the bankruptcy sale proceeding, MFA filed a Complaint in Equity against Reinert in Pennsylvania state court alleging Reinert converted personal property, proprietary trade secrets, and confidential information that MFA purchased during the bankruptcy sale proceeding. With consent of the parties, MFA's complaint was removed to the United States Bankruptcy Court for the Western District of Pennsylvania, where MFA subsequently filed a Motion for Preliminary Injunction. It is MFA's conversion action against Reinert that we review on appeal.

The bankruptcy sale proceeding took place as follows. Fifth Third Bank, as the primary secured creditor, obtained a receivership order against Reinert and certain Reinert-controlled entities in the United States District Court for the Western District of Pennsylvania. Reinert and certain Reinert-controlled entities later commenced voluntary Chapter 11 cases before the United States Bankruptcy Court for the Western District of Pennsylvania. Those entities included Power Contracting, Inc.; MFPF, Inc.; Metal Foundations, LLC; Dressel Associates, Inc.; and Flying Roadrunner, Inc. (hereinafter

2

"debtor entities"). Certain Reinert-controlled entities, namely SAFE Foundations, LLC ("SAFE Foundations"), and SAFE Extensions, Inc. ("SAFE Extensions"), were subject to the receivership order but not included in the bankruptcy filings ("non-debtor entities"). The bankruptcy cases were jointly administered, a Chapter 11 trustee was appointed, and the Trustee sold certain assets to MFA.

During the asset sale, Fifth Third Bank sold its secured claims to MFA. The Trustee then held an auction to sell assets subject to the lien of Fifth Third Bank, which now belonged to MFA. Ownership of the lien provided MFA with the right to credit bid its acquired secured claim at auction. No bankruptcy schedules were filed at the time of the auction. Although the Bankruptcy Court in the bankruptcy sale proceeding cautioned against proceeding to sale without schedules setting forth the identity of various debtors' assets, the parties chose to proceed to auction. At auction, no competing bidder emerged and MFA subsequently purchased certain assets defined by a "credit bid letter agreement" ("CBA"). The CBA provided that all of the assets of all of the debtor entities were to be sold to MFA. In addition, the CBA provided that certain unencumbered assets of the debtors, including assets of Mr. Reinert, were also to be sold to MFA. Although MFA had a lien against SAFE Extensions and SAFE Foundations, they were not included in the CBA because they were non-debtors who were believed to own no assets. The assets included in the CBA were described in exhibits as "all of those [assets] used or related to the operation of foundations business" by the debtor entities. The Bankruptcy Court in the bankruptcy sale proceeding subsequently approved the sale. Believing it had acquired all of the assets of Reinert-controlled entities used in or related to the operation

3

of foundations business, MFA then released its lien, including the lien it held against SAFE Foundations.

The CBA was prepared based upon the due diligence of MFA, with the assistance of the Trustee, Reinert, and his agents. Specifically, the CBA relied upon representations made by Reinert. First, Reinert represented that SAFE Extensions had dissolved years before the bankruptcy petition date. Second, Reinert represented to PNC Bank, Fifth Third Bank, and the Commonwealth of Pennsylvania that Metal Foundations, LLC, which was a debtor under the control of the Trustee and a party to the CBA, was the successor of SAFE Foundations. This representation was made again directly to MFA. Finally, exhibits to the CBA were circulated to Reinert stating that the assets in question belonged to Metal Foundations, LLC. Reinert did not object to these exhibits or claim the assets were owned by any entity other than Metal Foundations, LLC. In other words, Reinert represented to the Bankruptcy Court in the bankruptcy sale proceeding that any assets that were once owned by SAFE Extensions and SAFE Foundations were now owned by parties subject to the CBA.

In the conversion action reviewed here, Reinert's primary defense to MFA's conversion claim was that the assets in question were not sold to MFA because they belonged to SAFE Extensions and SAFE Foundations, which were not subject to the CBA. Because Reinert's position in the conversion action was in direct contrast to his representations in the bankruptcy sale proceeding—that SAFE Extensions and SAFE Foundations owned no assets—the Bankruptcy Court and the District Court in the conversion action found equitable estoppel to bar Reinert from denying his

4

representations in the bankruptcy sale proceeding. Accordingly, Reinert was found to have converted, and thus ordered to return, MFA's assets.

## II.[1]

Reinert argues that the use of "equitable estoppel" in the conversion action defined the scope of the sale in the bankruptcy sale proceeding beyond the Bankruptcy Court's jurisdiction. But we see no jurisdictional issue in this case. Instead, the issue here is the finality of the bankruptcy sale proceeding.

We have recognized the importance of providing finality to bankruptcy court orders such that they can be relied upon by third parties. *Cf., e.g.*, *Pittsburgh Food & Beverage, Inc. v. Ranallo*, 112 F.3d 645, 649-50 (3d Cir. 1997) (finding that jurisdictional challenges to the authority of the Trustee under section 363(b) are moot if the stay required by section 363(m) is not obtained and a reversal or modification would affect the validity of the sale). There were many opportunities in the bankruptcy sale proceeding for Reinert to object that the assets in question were not properly part of the sale, including at the hearing on the motion to approve the sale, at which Reinert was silent, and upon direct appeal after acquiring a stay. But rather than object or appeal, Reinert allowed the approval of the sale to become final. Reinert explained that he did not view objecting in the bankruptcy sale proceeding as a "big deal . . . because [he] thought MFA bought all the assets," including those at issue in this appeal. Reinert was not alone in this belief, as

---

[1] We exercise plenary review over the Bankruptcy Court's legal conclusions and the District Court's appellate review of the Bankruptcy Court's decision. *In re Miller*, 730 F.3d 198, 203 (3d Cir. 2013). The factual findings of the Bankruptcy Court are reviewed for clear error. *Id.* The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157(b), 1334(b), and 1452(a). The District Court had jurisdiction to review the bankruptcy appeal under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

MFA also understood the sale to include the assets in question. Reinert's representations that SAFE Extensions and SAFE Foundations owned no assets[2] formed a core premise of the Bankruptcy Court's approval of the sale in the bankruptcy sale proceeding and MFA's decision to release its lien. Nonetheless, upon accusations that he has converted assets of MFA, Reinert now asserts the assets were actually owned by SAFE Extensions and SAFE Foundations. In other words, Reinert wishes to undo the finality of the bankruptcy sale proceeding by taking a contrary position in the later conversion action. But Reinert never objected to the sale or appealed it and he cannot do so now in the later conversion action. Accordingly, no jurisdictional defect exists in this case.

Finally, Reinert contends that it was error for the court in the conversion action to order that he return a "tooling" asset to MFA from India. Reinert contends that the court's order was based upon an erroneous factual finding that Reinert moved the tooling from South Africa to India after the sale to MFA. But what Reinert describes as plain error was harmless error. While the court said the tooling was shipped to India in 2012, which was after the sale, the context of the court's opinion exposes this as a clear typographical error. If the court had in fact meant 2012, there would have been no need for it to explain that the transfer took place without the knowledge or consent of the Trustee, as by that time MFA would have been the owner of the tooling and the Trustee's consent would have been irrelevant. In addition, all the evidence shows the tooling was moved to India in 2011.

---

[2] Reinert represented that SAFE Extensions was dissolved and SAFE Foundations was succeeded by Metal Foundations, LLC. During the due diligence leading up to the sale, Reinert represented that the only asset owned by SAFE Foundations was an excavator, which MFA ultimately purchased outside of the sale.

But the problem for Reinert is that, even if the tooling was moved before the sale, it was indisputably moved after the Trustee's appointment and without the knowledge or consent of the Trustee in violation of the automatic stay provision of the Bankruptcy Code. *See* 11 U.S.C. § 362(a)(3). In its memorandum order considering Reinert's motion for reconsideration, the court clarified that its order to return the tooling was based on Reinert's violation of the automatic stay. Reinert is fortunate the court limited his penalty to returning the tooling to MFA, as a more serious penalty could have been imposed given the court's finding that his "exercise of control over the tooling subsequent to the [T]rustee's appointment was a sanctionable violation of the automatic stay."[3] Accordingly, it was not error to order Reinert to return the tooling.

### III.

For the foregoing reasons, we will affirm.

---

[3] *See In re Atl. Bus. & Cmty. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990) (stating that the automatic stay provision "provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional" (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989))).