**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2329
_____

ANDREW FIELDS,
            Appellant

v.

FEDERAL BUREAU OF PRISONS; WARDEN BRADLEY; A. W. ECKHART; JOHN
DOE, Custody Warden; JOHN DOE, Captain; LIEUTENANT C. FRISK; S.O.S. C.
HEENAN; S.O.S. J. VODA; S.O.S. J. SCHWARTZ; S.O.S. A. BURGH; S.O.S.
OFFICER ROLLISON; S.O.S. OFFICER P. MILLER; UNIT MANAGER FRIES;
COUNSELOR T. OLIVER; OFFICER DEFEBO; S.O.S. Officer John Doe; S.O.S.
Officer Jane Doe; S.O.S. OFFICER SICLARI; OFFICER OBLOSHNY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:21-cv-01038)
District Judge: Honorable Malachy E. Mannion
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 11, 2025
Before:  HARDIMAN, MATEY, and CHUNG, Circuit Judges

(Opinion filed August 20, 2025)
_____

OPINION*
_____

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Andrew Fields appeals the District Court's order granting summary judgment. We will affirm.

Fields, a federal prisoner, filed a civil-rights complaint pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that he was mistreated at the United States Penitentiary, Canaan. He asserted that he was transferred to Canaan in retaliation for filing prior civil complaints. Shortly after his arrival there, Fields was placed in the Special Housing Unit while under investigation for having a history of engaging in sexual acts. According to Fields's complaint, his belongings, including his bed, mattress, sheets, blankets, and personal papers, were frequently confiscated from his cell, which was "freezing cold." Fields claimed that on at least one occasion, the prison officers placed him in paper clothing when his cell was below zero degrees. He also claimed that his corrections counselor refused to visit him and failed to provide him with grievance forms and legal papers.

After two months in the Special Housing Unit, Fields returned to the general population. There, he alleged, he was denied phone calls, and funds were wrongfully deducted from his inmate trust fund account. Fields also described incidents where inmates beat and stabbed him, and where, on another occasion, prison officers banged his head into a wall, and punched, kicked, and stomped on him while he was in handcuffs. Fields eventually returned to the Special Housing Unit, where, he claimed, the prison

2

employees intentionally placed him in a cell with an inmate affiliated with a rival gang. According to Fields, the prison officers continued to confiscate his personal belongings, deny him access to the law library and mail, and instigate fights between him and other inmates.

Liberally construed, Fields's complaint alleged that the prison employees: 1) interfered with his access to courts and retaliated against him in violation of the First Amendment; 2) discriminated against him based on his sexual history, unlawfully confined him in the Special Housing Unit, and deprived him of his property in violation of the Fifth Amendment; and 3) used excessive force, failed to protect him from inmate assault, and subjected him to harsh confinement conditions in violation of the Eighth Amendment. Fields sought monetary damages.[1]

The defendants moved to dismiss and for summary judgment, arguing that Fields failed to exhaust his administrative remedies, that Fields had no Bivens remedy, that the Bureau of Prisons was entitled to sovereign immunity, and that Fields failed to file an administrative tort claim, as required under the Federal Tort Claims Act ("FTCA"). The District Court granted summary judgment in the defendants' favor, determining that Fields failed to exhaust his administrative remedies. Fields appealed.

---

[1] To the extent that Fields sought release from custody, such relief is not available in a civil-rights action. See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). We may affirm the "judgment on any basis supported by the record." United States ex rel. Spay v. CVS Caremark Corp., 875 F.3d 746, 753 (3d Cir. 2017). Here, we will affirm the District Court's judgment because, even assuming that administrative remedies were not available to Fields, he failed to state a claim for relief under Bivens.[2] See 42 U.S.C. § 1997e(c)(2).

The Supreme Court recognizes a Bivens cause of action to redress constitutional violations by federal officers in three limited contexts: 1) under the Fourth Amendment for an unreasonable search and seizure of a residence, see Bivens, 403 U.S. at 397; 2) under the Fifth Amendment Due Process Clause for sex discrimination, see Davis v. Passman, 442 U.S. 228, 248–49 (1979); and 3) under the Eighth Amendment for failure to provide adequate medical treatment to a prisoner, see Carlson v. Green, 446 U.S. 14, 19 (1980). See Egbert v. Boule, 596 U.S. 482, 490–91 (2022). But further expanding the Bivens remedy is "disfavored." Ziglar v. Abbasi, 582 U.S. 120, 135 (2017). Thus, to determine whether a Bivens claim may proceed, a court first considers "whether the case presents a new Bivens context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." Egbert, 596 U.S. at 492 (citation

---

[2] Fields has forfeited any argument that he had a remedy under the FTCA. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

modified) (quoting <u>Ziglar</u>, 582 U.S. at 139). If the context is new, a <u>Bivens</u> remedy is not available "if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> (citation modified) (quoting <u>Ziglar</u>, 582 U.S. at 136). "Any special factor—even one—suffices to foreclose a new <u>Bivens</u> cause of action." <u>Fisher v. Hollingsworth</u>, 115 F.4th 197, 207 (3d Cir. 2024).

"For the past 45 years, [the Supreme Court] has consistently declined to extend <u>Bivens</u> to new contexts." <u>Goldey v. Fields</u>, No. 24-809, 2025 WL 1787625, at *2 (U.S. June 30, 2025) (per curiam) (declining to recognize a <u>Bivens</u> claim for excessive force in violation of the Eighth Amendment); <u>see also</u> <u>Egbert</u>, 596 U.S. at 498–99 (rejecting a <u>Bivens</u> cause of action for a First Amendment retaliation claim). So have we. <u>See, e.g.</u>, <u>Fisher</u>, 115 F.4th at 206–08 (no <u>Bivens</u> remedy against federal officials who fail to prevent inmate-on-inmate assault); <u>Xi v. Haugen</u>, 68 F.4th 824, 835–37 (3d Cir. 2023) (no <u>Bivens</u> remedy for racial discrimination in violation of the Fifth Amendment); <u>Kalu v. Spaulding</u>, 113 F.4th 311, 337–40 (3d Cir. 2024) (no <u>Bivens</u> remedy for Eighth Amendment conditions-of-confinement claim).

Here, all of Fields's claims present new <u>Bivens</u> contexts—they each differ "in a meaningful way" from <u>Bivens</u>, <u>Carlson</u>, and <u>Davis</u>. <u>Ziglar</u>, 582 U.S. at 139. Furthermore, "special factors" counsel against extending the <u>Bivens</u> remedy to Fields's claims. For one, "Congress has actively legislated in the area of prisoner litigation but has not

5

enacted a statutory cause of action for money damages." Fields, 2025 WL 1787625, at *2. Furthermore, "[e]xtending Bivens to alleged First Amendment violations would pose an acute risk of increasing [litigation] costs." Egbert, 596 U.S. at 499. And extending Bivens to allow Eighth Amendment claims for excessive force, confinement conditions, and failure to protect would substantially burden prison operations. See Fields, 2025 WL 1787625, at *2; Kalu, 113 F.4th at 339; Fisher, 115 F.4th at 207–08. Judicially recognizing Fields's due process claims would similarly deprive the prison employees of the "wide-ranging deference they need to preserve order and maintain security." Fisher, 115 F.4th at 208; see also Mays v. Smith, 70 F.4th 198, 206 (4th Cir. 2023).

Finally, the existence of an alternative remedial structure also counsels against extending Bivens, even if we assume that prison employees did not afford Fields adequate opportunities to utilize the prison's grievance system. See Fields, 2025 WL 1787625, at *2; see also Egbert, 596 U.S. at 497–98 ("[W]e have never held that a Bivens alternative must afford rights to participation or appeal."). In the "special factors" analysis, "the focus is not on the individual's recovery at all[,]" but rather on the fact that Congress created a remedial process that it found sufficient to deter unconstitutional action against prisoners. Xi, 68 F.4th at 837.

Accordingly, we decline to recognize a Bivens remedy for any of Fields's claims, and we will affirm the District Court's judgment in favor of the defendants.