**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3140
_____

IN RE: THOMAS C. WETTACH,
                                        Debtor


JEFFREY J. SIKIRICA, CHAPTER 7 TRUSTEE

v.

THOMAS C. WETTACH; BETTE C. WETTACH,
                                        Appellants

_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 2-13-cv-01822)
District Judge: Honorable Nora B. Fischer
_____


Argued November 23, 2015

Before: BENTON, SENTELLE and GILMAN, *Circuit Judges**

(Opinion filed: January 20, 2016)

James R. Cooney, Esq.        (Argued)
Robert O. Lampl, Esq.
Robert O. Lampl & Associates
960 Penn Avenue
The Convention Tower, Suite 1200
Pittsburgh, PA 15222

       Counsel for Appellants

Neal H. Levin, Esq.          (Argued)
Freeborn & Peters
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

Jeffrey J. Sikirica, Esq.
121 Northbrook Drive
Gibsonia, PA 15044

       Counsel for Appellee

---

* The Honorable Duane Benton, Circuit Judge of the Eighth Circuit Court of Appeals, the Honorable David Bryan Sentelle, Senior Circuit Judge of the District of Columbia Court of Appeals, and the Honorable Ronald Lee Gilman, Senior Circuit Judge of the Sixth Circuit Court of Appeals, sitting by designation.

———————

OPINION

———————

SENTELLE, *Senior Circuit Judge*.

Appellants Thomas C. and Bette C. Wettach appeal from an order of the district court affirming the bankruptcy court's award to the bankruptcy trustee for various fraudulent transfers between 2001 and 2005. The Wettachs challenge the bankruptcy court's (a) allocation of the burdens of persuasion and production on the fraudulent transfer claims, (b) evidentiary findings, and (c) legal determination that the deposit of wages into an account held by the entireties constitutes the "transfer" of an "asset" under Pennsylvania state law. Because we conclude that the bankruptcy court's legal conclusions were correct and its evidentiary findings were not clearly erroneous, we affirm the order of the district court affirming the bankruptcy court's decision as to all issues.

## I. BACKGROUND

### A. FACTS

Because the bankruptcy court has already detailed the extensive history of this dispute, *see Sikirica v. Wettach (In re Wettach)*, 489 B.R. 496, 503-06 (Bankr. W.D. Pa. 2013), we recite only the essential facts.

The debtor in this bankruptcy case is Thomas C. Wettach, a former partner at the now-defunct law firm of

Titus & McConomy, LLP ("Titus"). Prior to its dissolution in 1999, Titus rented office space from Trizechahn Gateway LLC ("Trizec") under a long-term lease agreement. After the firm dissolved, Trizec filed suit in 2000 against Titus's former partners for unpaid rent under the lease. The Pennsylvania Court of Common Pleas for Allegheny County found that Thomas Wettach and the other Titus partners were jointly and severally liable for $2,700,000, plus interest and costs. Although the Pennsylvania Superior Court initially reversed the judgment as to Wettach, *see Trizechahn Gateway LLC v. Titus*, 930 A.2d 524, 539 (Pa. Super. Ct. 2007), the Pennsylvania Supreme Court reinstated his liability, *see Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 481 (Pa. 2009).

Before the *Trizechahn* court entered final judgment on June 7, 2006, Thomas Wettach filed a voluntary Chapter 7 bankruptcy petition on October 14, 2005. Wettach's bankruptcy petition listed $3,551,500 in assets, including $2,951,500 in personal property, retirement accounts, insurance policies, and the contents of a PNC checking account held by the entireties (the "entireties account") with his wife Bette Wettach. App. 662, 664-67. Wettach claimed all of this property as exempt under federal bankruptcy law and applicable Pennsylvania state law, primarily relying on the exemption for property in which the debtor holds an interest as a tenant by the entirety. *See* 11 U.S.C. § 522(b)(1), (3)(B); 12 Pa. C.S.A. § 5101(b).

### B. PROCEDURAL HISTORY

In order to reach at least some of these assets for distribution to Wettach's creditors, the trustee of the

4

bankruptcy estate, Jeffrey Sikirica, initiated an adversary proceeding on October 15, 2007. Following the dissolution of Titus, Wettach joined the law firm of Cohen & Grigsby, P.C., and earned wages that the firm directly deposited into the entireties account. The Trustee claimed in his amended complaint that these deposits constituted recoverable fraudulent transfers since they "had the effect of shielding the Debtor's individual compensation from the reach of his individual creditors . . . by converting it into entireties' property." *In re Wettach*, 489 B.R. at 505. In particular, the Trustee alleged, as relevant here, two counts of constructive fraudulent transfers under the Pennsylvania Uniform Fraudulent Transfer Act (the "PUFTA"), 12 Pa. C.S.A. §§ 5104(a)(2)(ii), 5105.

The bankruptcy court held a trial on these claims on November 30, 2011. However, before the court could issue its decision, the presiding judge, U.S. Bankruptcy Judge Bernard Markovitz, retired. The case was subsequently reassigned to U.S. Bankruptcy Judge Thomas P. Agresti. After the parties consented to the bankruptcy court issuing findings of fact and conclusions of law without the need for a new trial, the court issued a Memorandum Opinion and Order on March 26, 2013, finding in favor of the Trustee and awarding a recovery of $428,868.12. *See In re Wettach*, 489 B.R. at 531. On November 12, 2013, the bankruptcy court awarded an additional $37,139.01 in prejudgment interest, resulting in a total award of $466,007.13. *See Sikirica v. Wettach (In re Wettach)*, Bankr. No. 05-38188-TPA, Adv. No. 07-2519, 2013 WL 5999167, at *8 (Bankr. W.D. Pa. Nov. 12, 2013).

The Wettachs appealed the bankruptcy court's decision to the U.S. District Court for the Western District of Pennsylvania. The district court rejected each of the Wettachs' arguments on appeal and affirmed the bankruptcy court's decision. *See Sikirica v. Wettach*, 511 B.R. 760, 773 (W.D. Pa. 2014). The Wettachs now appeal from the district court's order affirming the bankruptcy court's award.

## II. ANALYSIS

We have jurisdiction over this appeal under 28 U.S.C. § 158(d)(1). "Because the District Court sat as an appellate court, reviewing an order of the Bankruptcy Court, our review of the District Court's determinations is plenary." *SEC v. Bocchino (In re Bocchino)*, 794 F.3d 376, 379 (3d Cir. 2015) (quoting *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir. 2012)). "In reviewing the Bankruptcy Court's determinations, we exercise the same standard of review as did the District Court." *In re Heritage Highgate, Inc.*, 679 F.3d at 139. We therefore "review the Bankruptcy Court's legal determinations *de novo* and . . . its factual determinations for clear error." *In re Bocchino*, 794 F.3d at 380.

The Bankruptcy Code grants the Trustee the power to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." 11 U.S.C. § 544(b)(1). Pennsylvania state law permits a creditor to avoid a fraudulent transfer "to the extent necessary to satisfy the creditor's claim." 12 Pa. C.S.A. § 5107(a)(1). However, the creditor can recover only for transfers made during the four-year "lookback" period preceding the date of

6

filing the action. *Id.* § 5109. In this case, the bankruptcy court determined that the relevant lookback period ran from October 14, 2001, until October 14, 2005. *In re Wettach*, 489 B.R. at 509.

Relevant to this appeal are the Trustee's constructive fraudulent-transfer claims under 12 Pa. C.S.A. §§ 5104(a)(2)(ii), 5105. As the district court noted, under both provisions, "a direct deposit of wages into a jointly held bank account is generally considered to be a fraudulent transfer if the debtor was [(a)] insolvent at the time of the transfer and [(b)] the debtor failed to receive 'reasonably equivalent value' in return." *Sikirica v. Wettach*, 511 B.R. at 765. Thomas Wettach's insolvency is not at issue in this appeal. However, the Wettachs vigorously dispute whether there was "reasonably equivalent value" for the transfers. Because "[u]nder the PUFTA, entireties account funds used to pay for 'reasonable and necessary household expenses' are not fraudulent[,]" *Titus v. Shearer*, 498 B.R. 508, 515 (W.D. Pa. 2013), they argue that the bankruptcy court erred when it permitted the Trustee to recover based on funds in the entireties account allegedly used to pay for "necessary" expenditures.

The Wettachs purport to raise ten separate issues in their opening brief. Appellants' Br. 1-2. In addition to challenging the allocation of the burdens of persuasion and production for the Trustee's constructive fraudulent-transfer claims, they dispute various evidentiary findings by the bankruptcy court. *Id.* Furthermore, the Wettachs make a statutory-interpretation argument that the deposit of wages into an entireties account is not a "transfer" of an "asset" under Pennsylvania law. *Id.* at 2. However, two of the

7

Wettachs' arguments are not developed in their opening brief: (a) that the Trustee breached his duties to the Court by failing to offer into the record an exhibit allegedly delineating the deposits into the entireties account, and (b) that the bankruptcy court erred by finding that the only deposits into the entireties account were Thomas Wettach's wages. Because these claims were not timely presented, we hold that the Wettachs have forfeited them.

For those issues not forfeited on appeal, we reject each of the Wettachs' arguments and affirm the order of the district court.

### A. THE BANKRUPTCY COURT PROPERLY ALLOCATED THE BURDENS OF PERSUASION AND PRODUCTION FOR THE TRUSTEE'S CONSTRUCTIVE FRAUDULENT TRANSFER CLAIMS

First, the Wettachs argue that the bankruptcy court "improperly shifted the burden of proof" to them to demonstrate that they used funds deposited into the entireties account to pay for necessities. Appellants' Br. 13. We review the allocation of the burdens of persuasion and production de novo, *cf. United States v. Dodd*, 225 F.3d 340, 343 (3d Cir. 2000), and affirm the district court's order affirming the bankruptcy court.

#### 1. Legal Framework

We recognized in *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996), that, where state law provides the rule of decision, the allocation of the burden of proof is a matter of substantive state law. This rule applies

8

even if, as here, the Court's subject-matter jurisdiction is not premised on diversity of the parties. *See Hatco Corp. v. W.R. Grace & Co.—Conn.*, 59 F.3d 400, 406 (3d Cir. 1995). However, the PUFTA "is silent on the issue of the burden of proof for constructive fraud claims." *Fidelity Bond & Mortg. Co. v. Brand*, 371 B.R. 708, 717 (E.D. Pa. 2007); *cf. Cardiello v. Arbogast*, 533 F. App'x 150, 156 (3d Cir. 2013) (same). In accordance with the Supreme Court's decision in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), we therefore proceed by "predict[ing] how the highest court of [Pennsylvania] would decide the relevant legal issues." *Ohio Cas. Grp. of Ins. Cos. v. Prof'l Ins. Mgmt. (In re Prof'l Ins. Mgmt.)*, 130 F.3d 1122, 1125 (3d Cir. 1997).

On appeal, the Wettachs improperly conflate the burdens of persuasion and production. Our case law is clear that these burdens are "two distinct elements of the burden of proof . . . ." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 287 (3d Cir. 2006). Although the burden of persuasion "does not change at any time throughout the trial," the burden of production "may shift from side to side as the case progresses." *Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 217 (3d Cir. 2006) (citations and internal quotation marks omitted).

The record shows that the bankruptcy court required the Trustee to prove "by a preponderance of the evidence" all elements of the fraudulent-transfer claims, including a lack of reasonably equivalent value for the transfers. *In re Wettach*, 489 B.R. at 507. The district court also recognized that the

9

Trustee retained the burden of persuasion. *Sikirica v. Wettach*, 511 B.R. at 765-66.

Ordinarily, this conclusion would end the analysis since this allocation of the burden of persuasion favors the Wettachs. However, the bankruptcy court also placed on the Wettachs "the burden of *producing* at least some useful evidence" as to the uses of transferred funds. *In re Wettach*, 489 B.R. at 507 (emphasis added); *see also Sikirica v. Wettach*, 511 B.R. at 766 (affirming the bankruptcy court). And because the burden of production is itself a function of the burden of persuasion, the Court must address whether there was any legal error in the bankruptcy court's allocations of both burdens. *Cf. United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972). For the reasons stated below, we conclude that there was no error.

## 2. Burden of Persuasion

The allocation of the burden of persuasion for a constructive fraudulent-transfer claim under the PUFTA is unsettled in this circuit. We previously placed the burden of persuasion on the party defending the transfer to show either solvency or receipt of reasonably equivalent value by clear and convincing evidence. *See 718 Arch St. Assocs. v. Blatstein (In re Blatstein)*, 192 F.3d 88, 98 (3d Cir. 1999); *see also Walsh v. Gutshall (In re Walter)*, 261 B.R. 139, 143 (Bankr. W.D. Pa. 2001). Normally, this precedent would be controlling, but other courts have nonetheless rejected the *Blatstein* approach as dictum. *See, e.g.*, *Fidelity Bond & Mortg. Co.*, 371 B.R. at 721; *Castle Cheese, Inc. v. MS Produce, Inc.*, No. 04-878, 2008 WL 4372856, at *24 (W.D. Pa. Sept. 19, 2008). Those courts instead have allocated the

10

burden of persuasion to the party opposing the transfer to prove insolvency and a lack of reasonably equivalent value by a preponderance of the evidence. *See Fidelity Bond & Mortg. Co.*, 371 B.R. at 720-22.

At least part of the confusion lies with a change in Pennsylvania law that occurred in 1993, when the state replaced the Pennsylvania Uniform Fraudulent Conveyance Act ("PUFCA"), enacted in 1921, with the PUFTA. *Cf.* 12 Pa. C.S.A. § 5101 cmt. (1). The Pennsylvania Supreme Court previously interpreted the PUFCA as shifting the burden of persuasion to the party defending the transfer in order to demonstrate either solvency or reasonably equivalent value by clear and convincing evidence. *See, e.g.*, *Butler Cnty. v. Brocker*, 314 A.2d 265, 268 (Pa. 1974); *see also Elliott v. Kiesewetter*, 98 F.3d 47, 56-57 (3d Cir. 1996). But when the Pennsylvania General Assembly enacted the PUFTA in 1993 to replace the PUFCA, it made no mention of the burden of persuasion in the statutory text. *See Fidelity Bond & Mortg. Co.*, 371 B.R. at 717. Nor has the Pennsylvania Supreme Court yet addressed whether the PUFTA altered the burden of persuasion.

We stated in *Blatstein* that our discussion of the burden of persuasion for a constructive fraudulent-transfer claim under the PUFTA was "not necessary for our result." 192 F.3d at 98. Our analysis was therefore dictum. We now hold that, were it to consider the issue, the Pennsylvania Supreme Court would determine that the burden of persuasion as to all elements of a constructive fraudulent-transfer claim under the PUFTA remains with the party opposing the transfer. As relevant to this case, the Trustee needed to prove a lack of reasonably equivalent value for the transfers into the

11

Wettachs' entireties account by a preponderance of the evidence. We thus affirm the district court on this issue.

Pennsylvania has codified its methodology for statutory construction. *See* 1 Pa. C.S.A. §§ 1921-39. The ultimate objective "is to ascertain and effectuate the intention of the General Assembly." *Id.* § 1921(a). Lower courts addressing this issue have focused primarily on the legislative history behind the PUFTA. *See, e.g.*, *Fidelity Bond & Mortg. Co.*, 371 B.R. at 717-18 (noting that Comment (6) to 12 Pa. C.S.A. § 5102 describes the burden-shifting framework under the PUFCA as "an archaism" that "should not be followed . . ."). And it is true that under Pennsylvania law "[t]he comments or report of the commission, committee, association or other entity which drafted a statute *may* be consulted in the construction or application of the original provisions of the statute . . . ." 1 Pa. C.S.A. § 1939 (emphasis added). However, we find dispositive Pennsylvania's mandate that "[s]tatutes uniform with those of other states *shall* be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa. C.S.A. § 1927 (emphasis added).

The PUFTA is a statute "uniform with those of other states," *id.*, and we therefore interpret it in accordance with the laws of other jurisdictions, *see Klein v. Weidner*, 729 F.3d 280, 283 (3d Cir. 2013). The overwhelming weight of judicial authority on this issue supports placing the burden of persuasion on the party challenging the transfer to show a lack of reasonably equivalent value by a preponderance of the evidence. *See, e.g.*, *Dahar v. Jackson (In re Jackson)*, 459 F.3d 117, 123 (1st Cir. 2006) (New Hampshire UFTA); *Pirrotti v. Respironics, Inc.*, No. 3:11-CV-00439, 2013 WL

951721, at *5 (D. Conn. Mar. 12, 2013) (Connecticut fraudulent-transfer statute); *Floyd v. Option One Mortg. Corp. (In re Supplement Spot, LLC)*, 409 B.R. 187, 201 (Bankr. S.D. Tex. 2009) (Texas law); *Daneman v. Stanley (In re Stanley)*, 384 B.R. 788, 804-05 (Bankr. S.D. Ohio 2008) (Ohio law); *Brandt v. nVidia Corp. (In re 3dfx Interactive, Inc.)*, 389 B.R. 842, 863 (Bankr. N.D. Cal. 2008) (California UFTA); *Ellen Equip. Corp. v. C.V. Consultants & Assocs.*, 183 P.3d 940, 945 (N.M. Ct. App. 2008) (New Mexico UFTA); *Stone v. Ottawa Plant Food, Inc. (In re Hennings Feed & Crop Care, Inc.)*, 365 B.R. 868, 874-75 (Bankr. C.D. Ill. 2007) (Illinois Fraudulent Transfer Act).

We also observe, as persuasive authority, that, under the constructive-fraud provision of the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(B), the party opposing the transfer has the burden of persuasion to show the absence of "reasonably equivalent value" for the transfer. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 535 (1994); *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 144 (3d Cir. 1996). We see no reason to treat the PUFTA differently than the Bankruptcy Code, particularly since claims under the former statute are likely to arise in proceedings governed by the latter.

The district court's order affirming the bankruptcy court's determination and allocation of the burden of persuasion is therefore affirmed.

### 3. Burden of Production

The bankruptcy court stated that the Wettachs possessed the "burden of producing at least some useful

13

evidence to demonstrate how they spent the transferred funds . . . ." *In re Wettach*, 489 B.R. at 507. Absent such evidence, the Trustee was "deemed to have met his burden of proof as to reasonably equivalent value." *Id.* The bankruptcy court therefore created a rebuttable presumption that funds transferred into an entireties account are not in exchange for reasonably equivalent value. The effect of this rebuttable presumption was to shift to the Wettachs "the burden of producing sufficient evidence to rebut the presumed fact." *See McCann*, 458 F.3d at 288.

The bankruptcy court did not specify the type of presumption it imposed, but we have interpreted Fed. R. Evid. 301, which applies in bankruptcy proceedings, as implementing a Thayer, or "bursting bubble," theory of presumptions. *See McCann*, 458 F.3d at 287-88; *cf. Official Comm. of Asbestos Claimants v. G-I Holdings, Inc. (In re G-I Holdings, Inc.)*, 385 F.3d 313, 318 (3d Cir. 2004). Pennsylvania courts have also adopted the Thayer model of rebuttable presumptions. *See In re Fink's Estate*, 21 A.2d 883, 888-89 (Pa. 1941); *Lynn v. Cepurneek*, 508 A.2d 308, 311-12 (Pa. Super. Ct. 1986). Thus, once the debtor produces some evidence of reasonably equivalent value for a transfer, i.e., using entireties funds to pay for necessities, the presumption "disappears from the case." *McCann*, 458 F.3d at 288 (citation and internal quotation marks omitted).

Whether the imposition of this presumption is correct presents a more difficult question than whether the bankruptcy and district courts properly allocated the burden of persuasion. We have not been able to identify a consensus among other jurisdictions on the burden of production for a constructive fraudulent-transfer claim under either the UFTA

14

or the Bankruptcy Code.  However, some courts have shifted the burden of production once the trustee establishes a "prima facie case."  *See, e.g.*, *Braunstein v. Walsh (In re Rowanoak Corp.)*, 344 F.3d 126, 131-32 (1st Cir. 2003); *Riley v. Countrywide Home Loans, Inc. (In re Duplication Mgmt., Inc.)*, 501 B.R. 462, 485 (Bankr. D. Mass. 2013).

Nonetheless, because the inquiry turns on how the Pennsylvania Supreme Court would decide the issue, *see Ohio Cas. Grp. of Ins. Cos.*, 130 F.3d at 1125, we find instructive the conditions under which that Court has recognized other presumptions shifting the burden of production.  Clearly, one purpose of a presumption "is [] to direct a party to come forward with the evidence . . . ."  *Rice v. Shuman*, 519 A.2d 391, 395 (Pa. 1986).  Such information-forcing may be necessary if a party has "peculiar means of access to the evidence, or peculiar knowledge . . . ."  *Waters v. New Amsterdam Cas. Co.*, 144 A.2d 354, 356 (Pa. 1958) (citation and internal quotation marks omitted).  Other grounds for recognizing a presumption include "the probability that the presumed fact is . . . likely to be true; the procedural convenience of presuming, without proof, a fact frequently not put in issue; the fairness of allocating the burden of production to the party having superior access to the means of proof; and considerations of policy which lead the courts to favor one contention over another by giving it the benefit of a presumption."  *Commonwealth v. Vogel*, 268 A.2d 89, 103 (Pa. 1970) (separate opinion of Pomeroy, J.), *overruled on other grounds by Commonwealth v. Reilly*, 549 A.2d 503 (Pa. 1988).

In this case, the bankruptcy court's presumption serves an information-forcing purpose by requiring the party

opposing the fraudulent transfer claim, here the Wettachs, to come forward with information in their possession—i.e., how they used funds transferred into an entireties account. In light of the aforementioned guidelines from the Pennsylvania Supreme Court, we hold that the bankruptcy and district courts did not err when they required the Wettachs to produce "some evidence" as to uses of funds in the entireties account to rebut the presumption against receipt of reasonably equivalent value. Nor can the Wettachs claim any prejudice from this holding, which represents the consensus view of courts in this circuit. *See, e.g.*, *Titus v. Shearer*, 498 B.R. at 519-20; *Cohen v. Sikirica*, 487 B.R. 615, 621 (W.D. Pa. 2013); *Cardiello v. Arbogast (In re Arbogast)*, 466 B.R. 287, 308 (Bankr. W.D. Pa. 2012).

The order of the district court is therefore affirmed on this issue.

## B. THE BANKRUPTCY COURT DID NOT CLEARLY ERR IN ITS EVIDENTIARY FINDINGS

Having determined that the district and bankruptcy courts properly allocated the burdens of persuasion and production on the Trustee's fraudulent-transfer claims, we also affirm the district court's order affirming each of the disputed evidentiary findings of the bankruptcy court.

### 1. Existence and Amount of Wages Deposited Into the Entireties Account

First, the Wettachs argue that the Trustee failed to show the existence and amount of Thomas Wettach's wages deposited into the entireties account. The bankruptcy court found that the Trustee proved deposits of $933,472 during the

lookback period. *In re Wettach*, 489 B.R. at 512. The district court then rejected the Wettachs' argument that this figure referred only to gross, and not net, wages. *Sikirica v. Wettach*, 511 B.R. at 767-68. We agree with the district court that these findings were not clearly erroneous and affirm.

As to the existence of deposits, the Wettachs admitted in their answer that Thomas Wettach directed the deposit of his wages into the account. *See* App. 145 ¶ 24; 146 ¶ 26; 148 ¶ 36; 150 ¶ 51; 151 ¶ 55. These statements "are considered judicial admissions conclusively binding on the party who made them." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, __ U.S. __, 133 S. Ct. 1184, 1197 n.6 (2013) (quoting *Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)). Furthermore, Thomas Wettach even testified at trial that his law firm made these deposits. App. 333:6-:15. This evidence is sufficient to support the bankruptcy court's conclusion that the existence of deposits in the entireties account "is clearly established by the record." *In re Wettach*, 489 B.R. at 511.

With regard to the amount of such deposits, the bankruptcy court relied on the Wettachs' tax returns for the years 2001-2005 to find "potentially actionable deposits of $933,472" during the lookback period. *Id.* at 512-13. The record shows that the Wettachs reported on line 7 of their income tax returns gross wages of $376,358 in 2001, $202,122 in 2002, $365,305 in 2003, $242,597 in 2004, and $216,334 in 2005. *See id.* at 512. Furthermore, Bette Wettach testified at trial that she did not earn any income that she deposited into the entireties account during this period. *See* App. 375:10-:12; *see also* App. 332:9-333:5. In order to account for the Trustee's burden of persuasion and the relevant lookback period, the bankruptcy court took one-half

17

of the strict pro rata amounts reported for 2001 and 2005. *See In re Wettach*, 489 B.R. at 512 & n.12 (noting that only 79 days of 2001 and 287 days of 2005 fell within the lookback period). Based on these figures, the bankruptcy court found that the Trustee showed deposits of $933,472 into the entireties account. *Id.* at 513.[1] The bankruptcy court's method of calculation does not render this finding clearly erroneous.

The Wettachs respond, correctly, that line 7 of their federal income tax returns reflects gross, not net, wages. However, as the district court noted, this fact also does not demonstrate clear error by the bankruptcy court. *See Sikirica v. Wettach*, 511 B.R. at 767-68. Schedule I to the bankruptcy petition reports average monthly payroll deductions of $8,500 per month, or an average of $408,000 over the four-year lookback period. App. 679. The Wettachs provide no basis for disputing the accuracy of these figures, which are eligible for treatment as judicial admissions. *Cf. In re VanCleef*, 479 B.R. 809, 824 n.13 (Bankr. N.D. Ind. 2012); *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001). Even accounting for these payroll deductions, the record supports the district court's conclusion that Thomas Wettach deposited $525,472

---

[1] Our calculations, using the bankruptcy court's own figures, indicate that there were $935,473.59 in alleged deposits over the lookback period. We attribute the discrepancy to some combination of typographical error and rounding. Regardless, because both figures far exceed the $380,253.87 in recoverable expenditures for non-necessities found by the bankruptcy court, *In re Wettach*, 489 B.R. at 520, any error is harmless. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995).

in net wages into the entireties account during the lookback period.[2]  *See Sikirica v. Wettach*, 511 B.R. at 767.

Nevertheless, the Wettachs dispute this otherwise straightforward arithmetic exercise by reference to an exhibit ("Exhibit 23"), which they admit was not in the record at trial. *See* Appellants' Br. 14.  According to the Wettachs, Exhibit 23 supposedly includes data sheets showing "**all** deposits and withdrawals into and out of the PNC entireties bank account." *Id.* at 6 (emphasis in original).  These data sheets allegedly undermine the bankruptcy court's findings as to the existence and amount of wages deposited into the entireties account. *See id.* at 17-18.

Unfortunately for the Wettachs, Exhibit 23 is not in the record on appeal.  The Wettachs argue that the parties listed Exhibit 23 in the Joint Pretrial Statement and included it in the Notebook of Plaintiff's Exhibits before the bankruptcy court.  Appellants' Br. 14; Appellants' Reply Br. 6-7.  But under Fed. R. App. P. 6(b)(2)(B)(iii), for an appeal in a bankruptcy case, "[t]he record on appeal consists of: the redesignated record [by the parties] . . . ; the proceedings in the district court or bankruptcy appellate panel; and a certified copy of the docket entries prepared by the clerk under Rule 3(d)."  Neither party designated Exhibit 23 as part of the record before this Court or the district court.  *See Wettach v. Sikirica*, No. 2:13-cv-01822-NBF (W.D. Pa.), ECF Nos. 1-47,

---

[2]  Although the district court actually reports that there were "approximately $535,472 in [net] wages available for deposit into the joint account," *Sikirica v. Wettach*, 511 B.R. at 767, the context of the decision suggests that the discrepancy is a typographical error.  *Cf. Metal Founds. Acquisition, LLC v. Reinert (In re Reinert)*, 597 F. App'x 139, 142 (3d Cir. 2015).

1-48, 10, 14. The exhibit was also not part of the "proceedings in the district court." Fed. R. App. P. 6(b)(2)(B)(iii). To the contrary, the district court references Exhibit 23 only in passing and otherwise appears to have entirely ignored the document. *Cf. Sikirica v. Wettach*, 511 B.R. at 766. The bankruptcy court's brief mention of Exhibit 23 in its opinion is likewise inapposite. *Cf. In re Wettach*, 489 B.R. at 511.

We therefore affirm the district court on this issue.

### 2. Reasonably Equivalent Value for Funds in the Entireties Account

Second, the Wettachs argue that the Trustee failed to show that the deposits into the entireties account funded non-necessary expenditures. However, because the Wettachs did not carry their burden of production on this issue, we affirm the district court.

As discussed above, *see supra* Part II.A, the bankruptcy court correctly required the Trustee to prove all elements of his fraudulent transfer claims by a preponderance of the evidence. *See In re Wettach*, 489 B.R. at 507. However, it also created a rebuttable presumption that funds deposited into an entireties account were not in exchange for reasonably equivalent value and thereby shifted the burden of production to the Wettachs. *Id.*

The Wettachs produced no evidence to demonstrate how they spent the wages deposited into the entireties account. The bankruptcy court even offered them a "dollar-for-dollar reduction against any liability" for other deposits

20

into the account. *In re Wettach*, 489 B.R. at 507-08. The court in fact did exclude from the Trustee's potential recovery an inheritance from Thomas Wettach's father. *Id.* at 512-13. The only other potential source of funds that the Wettachs identify is $107,000 in pre-existing funds in the entireties account at the start of the lookback period. Yet the sole evidence of these funds is Exhibit 23, which is not part of the record in this case. *See supra* Part II.B.1. Having failed to carry their burden of production and absent clear error by the bankruptcy court, the Wettachs have no claim for relief on appeal.

The order of the district court on this issue is affirmed.

### 3. Automobile Expenses

Third, the Wettachs argue that the bankruptcy court erred when it found that the Trustee could recover $76,975 for non-necessary automobile expenses paid by the Wettachs during the lookback period. The court reached this figure by strictly apportioning the total automobile expenditures[3] of $134,706.02 among the Wettachs' seven vehicles after finding that only three vehicles qualified as necessities. *See In re Wettach*, 489 B.R. at 515-16. Because we hold that the bankruptcy court did not clearly err in its findings, we affirm.

---

[3] The bankruptcy court stated that the Trustee sought "a recovery of $134,706.02 for automobile expenses . . . during the lookback period." *In re Wettach*, 489 B.R. at 515. But the Trustee's Exhibit 36 reports that automobile expenditures were actually $134,716.02. App. 735. Assuming this discrepancy is due to a typographical error, the error is harmless since it is de minimis and favors the Wettachs. *Cf. SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 272-73 (3d Cir. 2013).

Thomas Wettach listed seven vehicles on his bankruptcy petition as personal property and valued them at $12,000 each. App. 699. At trial, he also testified that this $12,000 figure was a "good average" for the vehicles. App. 300:4-:19. Yet for the first time on appeal, and without any citation to the record, the Wettachs argue that the majority of their automobile expenditures were on two vehicles that the bankruptcy court allegedly found were necessities. Appellants' Br. 21-23. The fact that the Wettachs provide *no* evidence to substantiate this claim should be the end of the matter. *Cf. Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.)*, 92 F.3d 139, 156 (3d Cir. 1996). However, they also mischaracterize the bankruptcy court's actual finding. In particular, the court noted that it could find "*no basis* for deciding which of the vehicles should be considered necessities . . ." for the purpose of allocating expenditures. *In re Wettach*, 489 B.R. at 516 (emphasis added). This conclusion was not clearly erroneous in light of the bankruptcy petition and Thomas Wettach's own testimony. Therefore, even assuming reasonable disagreement about the appropriateness of strict apportionment of the automobile expenses, the bankruptcy court's finding that $76,975 were recoverable was also not clearly erroneous. *Cf. Publicker Indus., Inc. v. Roman Ceramics Corp.*, 652 F.2d 340, 344 (3d Cir. 1981) ("mere disagreement with the district court's factual determinations" does not warrant reversal).

We thus affirm the order of the district court on this issue.

### 4. Home Renovation Expenditures

Fourth, the Wettachs challenge the bankruptcy court's finding that the Trustee could recover $167,297.65 in home renovation expenditures during the lookback period. We hold that the bankruptcy court's findings were not clearly erroneous and affirm.

The Wettachs do not dispute the Trustee's claim that they spent $178,508.21 during the lookback period on home renovations. These renovations included the addition of an art studio, home office, a fourth bathroom, a second garage, finished basement, and extensive landscaping. However, they argue that these expenses were necessary in order to "complete" their home. *See* Appellants' Br. 24. But the bankruptcy court found that the house was already "habitable prior to the commencement of the improvements . . . ." *In re Wettach*, 489 B.R. at 517. The Wettachs do not dispute that the house already had a living room, dining room, kitchen, den, four bedrooms, three bathrooms, and a garage. *See* App. 237:6-:17, 357:6-:7. Furthermore, the bankruptcy court did reduce the Trustee's potential recovery by deducting $11,210.65 in certain home renovation expenditures related to repairs, furniture, yard work, and tree trimming. *See In re Wettach*, 489 B.R. at 518. The Wettachs otherwise rely entirely on arguments divorced from the factual record on appeal and fail to demonstrate that the bankruptcy court's findings were clearly erroneous. *Cf. United States v. Birch*, 591 F. App'x 54, 55-56 (3d Cir. 2015).

The Court affirms the district court's order affirming the bankruptcy court's award[4] of $167,297.65 for these expenditures.

### 5. Payments to Bette Wettach for Household Expenses

Fifth, the Wettachs dispute the bankruptcy court's finding, upheld by the district court, that the Trustee could recover $52,805 conveyed to Bette Wettach. Specifically, during the lookback period the Wettachs transferred funds from the entireties account to Bette Wettach, who then deposited these funds into a separate jointly-held account (the "Dollar General account"), allegedly to pay for various household expenses. *See In re Wettach*, 489 B.R. at 519. The bankruptcy court found that the total amount of these transfers during the lookback period was $148,505, of which $52,805 were potentially recoverable as non-necessary expenditures. *Id.* at 519-20. Because these findings are not clearly erroneous, we affirm.

We agree with the Trustee that the Wettachs' argument borders on the incomprehensible. Without any reference to the record, the Wettachs contend that average household expenditures paid by Bette Wettach were $2,750 per month. They then state that "[t]he total amount deposited during the lookback years totaled $146,405, a difference of $10,405 for non-necessities." Appellants' Br. 26. Presumably, the

---

[4] We note that subtracting the $11,210.65 in deductions from the Trustee's total figure of $178,508.21 in renovation expenses results in $167,297.56 of potentially recoverable expenditures. Any error, presumably typographical, by the bankruptcy court is de minimis and harmless.

24

Wettachs intend to argue that over the 48-month lookback period, Bette Wettach spent an average of $132,000 [= 48 months x $2,750 per month] in necessary household expenditures, meaning that the Trustee's potential recovery should be limited to $14,405 [= $146,405 - $132,000], instead of the $52,805 awarded by the bankruptcy court. Of course, they provide no support for any of these figures, and the Court declines the invitation to comb through the record in an attempt to disentangle the Wettachs' reasoning. *Cf. United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009).

By contrast, the bankruptcy court's reasoning is straightforward and not clearly erroneous, even if it does suffer from minimal mathematical deficiencies. Schedule J to the bankruptcy petition lists $10,110 in total average monthly expenses, App. 713, of which Bette Wettach testified that at least $1,950 comprised expenses paid by her from the Dollar General account, *see* App. 376:17-382:13. The Wettachs also do not credibly dispute this $1,950 figure. Over the lookback period, Bette Wettach therefore should have paid $93,600 [= 48 months x $1,950 per month] in household expenses from the account. Instead, the bankruptcy court found that she spent $148,505. *In re Wettach*, 489 B.R. at 519. It would not be clearly erroneous to conclude that the difference of $54,905 [= $148,505 - $93,600] therefore corresponds to non-necessary expenditures during the lookback period. For reasons that are not clear from the record, the bankruptcy court instead awarded $52,805 in potentially recoverable transfers. *Id.* at 520. As the discrepancy is in the Wettachs' favor, any error is harmless. *Cf. SBRMCOA*, 707 F.3d at 272-73.

We therefore affirm the order of the district court affirming the bankruptcy court on this issue.

### 6. Balance of Funds in the Entireties Account at Filing

Sixth, the Wettachs argue that the bankruptcy court improperly awarded $39,264.25 in potentially recoverable transfers, corresponding to the balances of the entireties and Dollar General accounts on the date that Thomas Wettach filed his bankruptcy petition. Because the bankruptcy court did not clearly err in its findings, we affirm.

The Wettachs dispute the bankruptcy court's findings on two grounds. First, they argue that the Trustee failed to identify the sources for these funds. For the reasons stated above, *see supra* Part II.B.1, the bankruptcy court did not clearly err when it found by a preponderance of the evidence that Thomas Wettach's wages were the source of these funds. Second, the Wettachs argue that because the funds remained in the accounts on the date of the bankruptcy filing, they were not spent on non-necessities. The Wettachs failed to raise this argument before the district court, *see* Br. for Appellants, *Sikirica v. Wettach*, No. 2:13-cv-01822-NBF, at *17-*18 (W.D. Pa. Jan. 29, 2014), ECF No. 4, and have therefore forfeited it on appeal here, *see Harris v. City of Philadelphia*, 35 F.3d 840, 845 (3d Cir. 1994). Regardless, they also failed to carry the burden of production as to how the funds were ultimately spent. *See supra* Part II.A.3. Because they failed to provide such evidence, the Trustee carried his burden of persuasion. *See In re Wettach*, 489 B.R. at 507.

We therefore affirm.

### C. THE WETTACHS' DEPOSITS OF WAGES INTO AN ENTIRETIES ACCOUNT ARE TRANSFERS OF ASSETS UNDER THE PUFTA

Finally, the Wettachs argue that the deposit of wages into an entireties account is not a "transfer" of an "asset" under the PUFTA. The district court considered and rejected this argument. We review the issue de novo and affirm.

The PUFTA defines a "transfer" as "[e]very mode . . . of disposing of or parting with an asset or an interest in an asset." 12 Pa. C.S.A. § 5101(b). Likewise, an "asset" under the PUFTA is "[p]roperty of [the] debtor . . . [but] does not include: . . . (2) property to the extent it is generally exempt under nonbankruptcy law . . . ." *Id.* Because Pennsylvania state law exempts wages held by the employer, *see* 42 Pa. C.S.A. § 8127(a), the Wettachs argue that such wages are not "assets" that a debtor can fraudulently "transfer" under the PUFTA, Appellants' Br. 27-28.

This Court interprets a state statute by "predict[ing] how the highest court of that state would decide the relevant legal issues." *Ohio Cas. Grp. of Ins. Cos.*, 130 F.3d at 1125. Neither the Pennsylvania Supreme Court nor the Third Circuit has addressed this issue, but intermediate Pennsylvania state courts have permitted attachment of wages directly deposited into an entireties account. *See, e.g.*, *Stinner v. Stinner*, 446 A.2d 651, 653 (Pa. Super. Ct. 1982). We have recognized that decisions of intermediate appellate state courts are indicative of how the state Supreme Court would interpret state law. *See Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 254 (3d Cir. 2010). The intermediate courts' view

also coincides with the weight of judicial authority on this issue. *See, e.g.*, *Cohen v. Sikirica*, 487 B.R. at 632; *In re Arbogast*, 466 B.R. at 310-12; *cf. Kaler v. Craig (In re Craig)*, 144 F.3d 587, 593 (8th Cir. 1998).

The Wettachs' reference to *Resolute Ins. v. Pennington*, 224 A.2d 757, 760 (Pa. 1966), is inapposite. That case stated, in dictum, that an individual could not waive his or her exemption from attachment as to wages. *Id.* It did not address the issue presented here, i.e., whether a direct deposit of wages into an entireties account can constitute a fraudulent transfer of assets under the PUFTA.

The Wettachs also make much ado about the fact that Pennsylvania law exempts wages from attachment "while in the hands of the employer . . . ." 42 Pa. C.S.A. § 8127(a). Relying, without citation, on "fundamental commercial law," they argue that wages directly deposited into an account "remain in the hands of the employer . . . until the funds are received by the bank . . . ." Appellants' Br. 28. Yet the Wettachs ignore the broad scope of the term "transfer" under Pennsylvania law. The PUFTA states that a "transfer" can be "direct *or indirect*, absolute or conditional, [or] voluntary or involuntary . . . ." 12 Pa. C.S.A. § 5101(b) (emphasis added). Thomas Wettach exercised control over where his employer deposited his wages. Therefore, when his employer initiated the direct deposit, the funds left the employer's "hands." The subsequent deposit of those funds into the entireties account is precisely the type of indirect transfer covered by the PUFTA. *See Cohen v. Sikirica*, 487 B.R. at 632; *In re Arbogast*, 466 B.R. at 312. "A person may not do by indirection what he is forbidden to do directly." *In re Craig*,

28

144 F.3d at 592 (quoting *Merriam v. Venida Blouse Corp.*, 23 F. Supp. 659, 661 (S.D.N.Y. 1938)).

The Wettachs also draw an analogy to an employer stopping payment on a check as evidence of retained employer control "until the funds are received by the bank." Appellants' Br. 28. However, they misstate Pennsylvania law. Pennsylvania requires that a stop-payment notice provide "reasonable time for the bank to act," meaning that the ability to stop payment is not absolute until the payment of funds. *See* 13 Pa. C.S.A. § 4303(a); *see also id.* § 4403(a). Thus, there exists some period of time before the payment of funds to the bank where wages are no longer in the employer's "hands," which is consistent with our analysis.

Accordingly, the Court affirms the district court's holding that the direct deposit of wages into an entireties account is a "transfer" of an "asset" under the PUFTA.

### D. THE WETTACHS HAVE FORFEITED THEIR REMAINING ARGUMENTS BY FAILING TO DEVELOP THEM IN THEIR OPENING BRIEF

The Wettachs raise two additional arguments in their Statement of the Issues Presented. Appellants' Br. 1-2. However, because they fail to develop either argument in their opening brief, the Court holds that the Wettachs have forfeited these claims. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993).

First, the Wettachs claim that the Trustee "breach[ed] his duties to the Court by failing to offer Exhibit 23 into the record[.]" Appellants' Br. 1-2. But as the Trustee correctly

notes, Appellee's Br. 2, the Wettachs provide no support for this position either in their opening brief or on reply. The Wettachs have therefore forfeited the argument. *See Kost*, 1 F.3d at 182.

Second, the Wettachs argue that the bankruptcy court "err[ed] in its 'finding' that no deposits were placed in the entireties account except Thomas Wettach's" wages. Appellants' Br. 2. Yet again the Wettachs provide no substantive argument on this issue in their opening brief, instead addressing it for the first time on reply. *See* Appellants' Reply Br. 5; *see also* Appellee's Br. 2 (noting the omission from the Wettachs' opening brief). These arguments come too late to avoid forfeiture. *See In re Surrick*, 338 F.3d 224, 237 (3d Cir. 2003). Regardless, the record supports the bankruptcy court's finding that the only recoverable deposits into the entireties account during the lookback period were Thomas Wettach's wages. *See In re Wettach*, 489 B.R. at 512-13; App. 332:12-333:5, 375:10-:12.

We therefore decline to reach these two issues, and affirm the district court's order.

## III. CONCLUSION

For the reasons stated herein, the Court affirms the order of the district court affirming the decision of the bankruptcy court.