**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3180
_____

KAYLA WILLIAMS,
                                        Appellant
v.

PENNSYLVANIA STATE UNIVERSITY; BRENDAN PRAWDZIK in his individual
capacity; LAUREN LANGFORD in her individual capacity; KAREN FELDBAUM in
her individual capacity; YVONNE GAUDELIUS in her individual capacity

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civil Action No. 4:20-cv-00298)
District Judge: Honorable Matthew W. Brann

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 28, 2025

Before:  RESTREPO, MATEY, and CHUNG, Circuit Judges

(Opinion filed: April 1, 2025)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pro se appellant Kayla Williams appeals the District Court's grant of summary judgment for defendants on her claims stemming from her time as a student at Pennsylvania State University ("Penn State"). For the reasons that follow, we will affirm the District Court's judgment.

I.

Williams' claims are based primarily on three sets of facts from after she matriculated at Penn State in 2016.[1] First, in January 2017, Williams made a report of sexual assault to 911 and Penn State's Office of Sexual Misconduct Prevention and Response ("OSMPR"). In October 2017, Williams requested a Title IX investigation, and in April 2018, OSMPR issued an investigative report. Williams subsequently posted criticism about the investigation on Twitter. After an internal Title IX hearing against one alleged perpetrator, the panel found the student not responsible. Appeals officer Dr. Yvonne Gaudelius denied Williams' appeal. Karen Feldbaum, who worked for the Office of Student Conduct, served as the case manager for the Title IX case.

Next, in the fall of 2019, Williams received a failing grade in a writing course. Williams argued that professor Brandon Prawdzik retaliated against her by failing her after she filed a complaint of racism against him with the Affirmative Action Office mid-way into the semester. Prawdzik maintained that a failing grade was appropriate because before Williams had even filed her complaint, she had already missed too many classes without providing supporting documentation to excuse the absences, which violated

_____

[1] Because we write primarily for the parties, we will recite only the facts necessary for this discussion. These facts are undisputed unless otherwise noted.

2

Prawdzik's attendance policy.

Finally, in October 2019, Williams' roommate, A.B., requested a no-contact order from the University against Williams, alleging that she had been threatened and harassed, and that Williams had used her personal information without permission. Later that month, in an unrelated incident, Williams was cited for harassment after she struck a Lyft driver named John Petrulich. There was video evidence of the incident. Williams was eventually convicted of harassment and her conviction was affirmed on appeal.

Laura Langford, Associate Director of the Office of Student Conduct, contacted Williams in November 2019 to discuss A.B.'s complaint, and Williams requested to meet after the holidays. In the interim, Petrulich contacted Penn State regarding his incident with Williams. Langford scheduled a meeting with Williams to discuss both issues, but Williams did not attend. Langford scheduled another meeting for January 24, and informed Williams that the meeting was "a mandatory appointment." Williams did not attend the January 24 meeting, and Langford recommended that Williams be charged with "harming or attempting to harm another" and "harassment by communication." Langford then scheduled another meeting, informing Williams that her failure to respond to the charges by a certain deadline would result in potential sanctions without her participation. The proposed sanctions were suspension and a requirement that she complete counseling to return. On January 31, 2020, when Williams did not respond, she was told that those sanctions would be implemented.

Williams contested this outcome, after which she received another opportunity to respond. On February 13, 2020, Williams received a hearing notice, scheduling a

University Conduct Board ("UCB") hearing for February 21, 2020. Langford contacted A.B. and Petrulich to request that they appear as witnesses, but both declined, although Petrulich provided a written statement.

Williams, through counsel, initiated this federal lawsuit on February 19, 2020. Her UCB hearing took place on February 21, as planned. Williams spoke at the hearing regarding both incidents and had an advisor available to consult with her. She was offered opportunities to take breaks, which she declined. Langford presented the case against Williams during the hearing but was not part of the deliberations panel. The UCB issued a written opinion on February 28, 2020, recommending that Williams be found responsible for both charges and suspended. The suspension was upheld by Gaudelius after Williams appealed.

In April 2020, Williams filed an amended complaint naming Penn State, Langford, Feldbaum, and Gaudelius as defendants.[2] She brought eight claims, two of which were dismissed on defendants' motion.[3] Her remaining claims alleged: (1) Title VI retaliation and discrimination based on issues with her professors; (2) due process violations regarding her suspension hearing; and (3) First Amendment retaliation based on her

---

[2] Williams named Prawzdik as an additional defendant in her amended complaint but later voluntarily dismissed him. She also included claims against Professor Michelle Yarwood in her original complaint but dropped her as a defendant in her amended complaint. To the extent that Williams takes issue with her counsel's voluntary dismissal of those claims, her counsel's conduct is not a ground for relief on appeal. See Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980).

[3] In her appellate brief, Williams does not discuss the claims that were dismissed. Accordingly, she has forfeited review of those issues. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (explaining that any issue an appellant fails to develop in an opening brief is forfeited).

suspension and the denial of her Title IX claim.  The District Court granted summary

judgment for defendants.  Williams timely appealed, pro se.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review

over the District Court's summary judgment ruling.  See Blunt v. Lower Merion Sch.

Dist., 767 F.3d 247, 265 (3d Cir. 2014).  Summary judgment is proper "if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact

exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the

nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

After careful review of the parties' arguments and the lengthy record in this case,

we agree that summary judgment was appropriately granted for defendants.  First,

Williams claimed that certain professors discriminated and retaliated against her.  She

argued that Prawdzik retaliated against her by giving her a failing grade after she

complained of racial discrimination.  However, Williams did not establish a prima facie

case of retaliation, as the evidence did not show a causal connection between her

complaint and the grade she received.  See Canada v. Samuel Grossi & Sons, 49 F.4th

340, 346 (3d Cir. 2022) (setting out the elements of a prima facie case of retaliation under

the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973)); NAACP v. Med. Ctr., Inc., 657 F.2d 1322, 1333 (3d Cir. 1981) (en banc)

(applying McDonnell Douglas in the Title VI context); see also Peters v. Jenney, 327

5

F.3d 307, 320 (4th Cir. 2003) (setting out the elements of Title VI retaliation). Rather, Williams had already missed so many classes that she was in danger of failing the course by the time she filed her complaint, and her brief does not address either the work she missed or her attendance issues, which the District Court described in detail.[4]

Williams also abandoned her Title VI discrimination claim involving a different professor by failing to make arguments in support of it in the District Court. She does not discuss this claim in her brief and has thus forfeited it on appeal. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

Next, Williams maintained that Penn State deviated from its policies during her suspension proceedings and hearing, violating her due process rights.[5] She argued that: (1) she was not given adequate notice of the charges against her; (2) she could not speak with her advisor during her hearing; (3) she could not cross-examine witnesses; and (4) Gaudelius should not have been part of her suspension proceedings.[6]

---

[4] Williams also argues that the professor used an offensive term at his deposition as proof that he retaliated against her, but she does not cite to the record, and we see no reference to this term in his deposition transcript.

[5] In the District Court, Williams also argued that Penn State's policies were facially unconstitutional. Because she does not discuss this claim in her appellate brief, it is forfeited. See Wettach, 811 F.3d at 115.

[6] Williams argued before the District Court that she was denied a pre-hearing meeting, but she does not discuss this issue in her brief, so we do not address it. See Wettach, 811 F.3d at 115. Additionally, Williams mentions in her brief that she should have been able to present unidentified witnesses on her behalf and discusses an individual whom she believes had a conflict of interest in her case, but she did not raise these issues in the District Court. Absent exceptional circumstances (which are not present here), we do not consider new issues raised for the first time on appeal. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88 n.12 (3d Cir. 2013).

"To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." Burns v. Pa. Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008). Due process, which is "flexible and calls for such procedural protections as the particular situation demands," fundamentally requires "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333-34 (1976) (internal quotation marks and citations omitted).

We agree with the District Court's thorough analysis on this claim. Williams was given sufficient written notice of the charges and proposed sanctions against her, with incident dates and descriptions, well in advance of her hearing. She also had an advisor present during her hearing, and the record shows that she declined opportunities for breaks to speak with her advisor or to meet with her advisor outside of the hearing room.

Although neither A.B. nor Petrulich was present at her hearing, Langford requested their presence, and Penn State had no mechanism to require their attendance. Both stated that they feared attending the hearing because of their experiences with Williams. Although Williams could not cross-examine them, she testified about her experience of each incident and provided her own evidence. The hearing panel evaluated evidence against Williams other than the accounts of A.B. and Petrulich, including Williams' documents.

Williams contended that Gaudelius had a conflict of interest and should not have been involved in her case.[7] Williams believes that this bias arose out of her involvement in Williams' Title IX case. However, this fact alone is not evidence of bias against her, and Williams does not point to any record evidence to suggest that Gaudelius' prior decision affected the outcome of Williams' disciplinary appeal. See In re Seidman, 37 F.3d 911, 925 (3d Cir. 1994) (explaining that administrative decisionmakers are presumed to be unbiased, and that evidence of "actual bias or a likelihood of bias" is required to support a due process claim).

Williams next claimed that defendants retaliated against her by suspending her after she initiated this lawsuit. She also claimed that, after she posted about the Title IX investigation on Twitter, defendants retaliated against her by rejecting her Title IX claim. To prevail on a First Amendment retaliation claim, Williams had to establish: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." See Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017).

Williams cannot establish causation here. She did not show that the temporal proximity of her suspension was "unusually suggestive" such that it was proof of

_____

[7] We do not consider Williams' new argument on appeal that Feldbaum should not have been involved in her suspension proceedings due to a conflict of interest. See Jenkins, 705 F.3d at 88 n.12. Williams claimed in the District Court that Langford was also biased against her, but we do not address that issue as Williams does not raise it in her appellate brief. See Wettach, 811 F.3d at 115.

retaliatory motive. See Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000) (explaining that "temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive'") (citation omitted). Williams was informed of the charges against her and the likelihood that she would be suspended weeks before she filed this lawsuit. A suspension was initially issued in January 2020, when Williams failed to respond to Langford's email scheduling a meeting about the charges. Her hearing was already scheduled for February 21, 2020, when she filed her lawsuit on February 19, 2020. The fact that the hearing took place as scheduled, and that Williams was suspended as a result, does not suggest that Williams was suspended in retaliation for initiating this litigation. See Farrell, 206 F.3d at 280-81 (emphasizing that "causation, not temporal proximity . . . is an element of plaintiff's prima facie case, and temporal proximity . . . merely provides an evidentiary basis from which an inference can be drawn") (citation omitted).

Additionally, Williams did not establish a causal link between her posts on Twitter and the outcome of her Title IX claim. "[F]or protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." Ambrose v. Township of Robinson, 303 F.3d 488, 493 (3d Cir. 2002). Williams has not pointed to any record evidence that the individuals involved in considering her Title IX claim knew about her posts.

Finally, Williams argued in the District Court that defendants engaged in spoliation of evidence when her e-mail account was automatically deleted during this

9

litigation pursuant to Penn State's data retention policy. The District Court did not abuse its discretion in concluding that Penn State inadvertently deleted her account as a matter of routine, as opposed to in bad faith, where Williams made only brief and conclusory arguments regarding this issue. See Bull v. United Parcel Serv., Inc., 665 F.3d 68, 79 (3d Cir. 2012) ("[A] finding of bad faith is pivotal to a spoliation determination."). Williams lists various categories of emails in her appellate brief that she believes were destroyed, but she does not explain how they would have assisted in proving her claims.[8]

Accordingly, we will affirm the judgment of the District Court.[9]

---

[8] Williams also raises many new arguments for the first time in her appellate brief. For example, she claims that her email was hacked, that documents relating to this litigation were forged, and that her transcripts were withheld from her for several years. As explained above, we do not consider these new allegations for the first time on appeal. See Wettach, 811 F.3d at 115. We also do not consider the arguments she makes for the first time in her reply brief. See Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017).

[9] Williams' motion to file a supplemental appendix is granted to the extent that the motion includes any documents that were part of the record before the District Court. To the extent that Williams seeks to expand the record on appeal, her motions are denied, as she has not demonstrated that this case presents exceptional circumstances. See Burton v. Teleflex Inc., 707 F.3d 417, 435-36 (3d Cir. 2013).