**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2599
_____

FARKHAN MAHMOOD SHAH,
Appellant

v.

AMERICAN AIRLINES, INC.; ASSOCIATION OF PROFESSIONAL FLIGHT
ATTENDENTS; JOHN DOES 1-5, being fictitious names for persons unknown
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil Action No. 2:17-cv-06298)
District Judge: Honorable Evelyn Padin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 22, 2023

Before: FREEMAN, SCIRICA, and AMBRO, <u>Circuit Judges</u>

(Opinion filed: April 14, 2023)
_____

OPINION[*]
_____

PER CURIAM

       Pro se appellant Farkhan M. Shah appeals the District Court's grant of summary

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

judgment in favor of his former employer, American Airlines, Inc. Shah brought claims of discrimination, hostile work environment, and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10.5-12. For the reasons that follow, we will affirm the District Court's judgment.

I.

Shah worked as a flight attendant for American Airlines ("American") from 1999 until 2020.[1] He had no issues in his workplace from 1999 until September 11, 2001, at which point he alleges that he began experiencing harassment on the basis of his religion and national origin — Shah is Muslim and of Pakistani descent. He experienced derogatory remarks about his religion and national origin by co-workers immediately after the September 11, 2001 attacks.

Shah reported unspecified discrimination to superiors in 2008 and 2011. He alleges that when he reported harassment to his supervisor in 2012, she got angry and shouted that discrimination did not exist at American Airlines. In 2013, Shah asked a different supervisor to remove incorrect notations in his attendance record, and the supervisor offered to remove them but never did. Shah filed a federal lawsuit under Title VII of the Civil Rights Act of 1964 regarding these incidents in 2014, but the case was ultimately dismissed for failure to serve the complaint pursuant to Federal Rule of Civil Procedure 4(m). Shah also filed an EEOC complaint in 2013.

---

[1] Because we write primarily for the parties, we will recite only the facts necessary for this discussion. These facts are undisputed unless otherwise noted.

2

Later in 2014, an FBI agent appeared at Shah's home and asked him questions about a conversation Shah had with other airline employees about the September 11, 2001 attacks; Shah maintains that no other employee was questioned. The FBI agent later came to Shah's home and asked him questions about propane that he purchased.

In 2015, Shah's parking pass at Newark Airport was revoked while he was working out of the Miami flight attendant base; Shah was ultimately told that he would have to get reimbursed for parking. Shah also asked for the interfaith area at the Miami airport to be open for 24 hours for him to pray; although he was told that it was open at all times, it was not.

In 2016, Shah was designated a security risk on several flights by the Transportation Security Administration ("TSA"). Shah's Known Crew Member privileges were also temporarily suspended per a TSA directive, so Shah could not bypass security screenings during that time. One request Shah made for a makeup flight was denied in 2016 and the flight was assigned to a flight attendant with less seniority. Shah filed an EEOC complaint that year; American was notified, and Shah was issued a Right to Sue notice in 2017. Shah also contacted his union several times over the course of his employment to raise complaints about his working environment.

In early 2020, American began the process of switching all flight attendants to a new uniform. After Shah's uniform order was placed, FedEx unsuccessfully attempted to deliver it to him on multiple occasions. In February 2020, Shah emailed his supervisor

3

and stated that he had not been able to receive his new uniform because he had been on vacation overseas. In the months preceding this email, and during the time of the attempted deliveries, Shah was working on reserve duty. Due to his reserve status, Shah was assigned Reserve Availability Periods ("RAPs") where he was expected to report to the Philadelphia airport — his assigned base at the time — within two hours if he was called for a flight. Flight attendants are paid for RAPs regardless of whether they are called to work a flight.

Shah's email alerted his supervisor that he had been out of the country at a time when he was being paid to be available to report to the Philadelphia airport within two hours of being contacted to come in. American's investigation showed that Shah was in Pakistan twice, and in San Diego once, on days when he had been assigned to work reserve duty and paid as a reserve flight attendant. Shah admits that he was traveling on these dates and had no intention of being available to work a flight from the Philadelphia base then. Shah has insisted that it was common practice to travel during RAPs, as he could always call in sick or trade the flight with someone else, and that this was permissible under his interpretation of his contract.

In June 2020, after several meetings with Shah, American sent Shah a termination letter. The reason for the termination was that Shah accepted pay for work he did not perform and could not have performed, and that he was intentionally unavailable to work reserve duty on several dates that he was assigned.

4

Several years before he was fired, in April 2017, Shah filed a counseled complaint in New Jersey state court bringing claims under the NJLAD against American and his union. After Shah's claims against his union were dismissed with prejudice, American removed the case to federal court on the basis of diversity jurisdiction. Shah amended his complaint after he was terminated. American ultimately moved for summary judgment, which the District Court granted. Shah timely appealed, pro se.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment for American. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

After careful review of the record and the parties' arguments, we agree with the District Court that summary judgment for American was proper.[2] Claims raised under

---

[2] We do not consider new arguments Shah raises for the first time on appeal, see Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88 n.12 (3d Cir. 2013), or any

5

the NJLAD are analyzed under the same framework applicable to Title VII cases. See Gerety v. Atl. City Hilton Casino Resort, 877 A.2d 1233, 1237-38 (N.J. 2005).

First, Shah did not establish a prima facie case of disparate treatment based on his termination. To state a prima facie case of disparate treatment, an employee must set out four elements, the last of which is that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination, such as where the employer treated a similarly situated employee who was not a member of the plaintiff's protected class more favorably. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Aside from Shah's unsupported belief that other flight attendants traveled while they were being paid during RAPs, there is no evidence in the record that any other individual was treated more favorably than Shah under the same circumstances. Rather, the record shows that American fired at least 14 flight attendants for the same conduct as Shah since October 2018. There is no other record evidence suggesting that he was fired under circumstances that give rise to an inference of unlawful discrimination. He does not identify any other adverse employment actions taken against him in his appellate brief. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016) (explaining that any issue an appellant fails to develop in an opening brief is forfeited).

arguments raised for the first time in his reply brief, see Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 146 (3d Cir. 2017).

Next, Shah did not establish a prima facie case for a hostile work environment claim. To state a prima facie case, he had to demonstrate facts that could suggest that his workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (emphasis added). In his brief, Shah argues that he demonstrated this through his testimony about "verbal harass[ment] . . . in front of his coworkers, identifying him as a security risk, altering his attendance records, [and] denying him religious accommodations." Appellant's Br. at 9.

The record evidence shows that Shah's supervisor yelled at him once in 2012 and that a different supervisor failed to correct his attendance record in 2013. The record also shows that in 2016 TSA — a separate entity from American — briefly designated Shah as a security risk. Finally, Shah testified that he asked another supervisor at the Miami base whether there was a place he could pray at all hours of the day, but it turned out that the location was not open at all hours, and Shah did not follow up on the request. Even considering other incidents that Shah did not specifically address in his brief, and setting aside the statute of limitations issue addressed by the District Court, the record would not permit a reasonable factfinder to conclude that Shah's workplace — in multiple cities and airport bases around the country, over many years — was so permeated with *discriminatory* harassment that it created an abusive working environment. See Harris,

7

510 U.S. at 21.

Finally, for Shah's retaliation and retaliatory discharge claims, he did not establish a causal connection between his termination and his complaints of harassment and discrimination. To state a prima facie case of retaliatory discharge, he must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006; Tartaglia v. UBS PaineWebber Inc., 961 A.2d 1167, 1192 (N.J. 2008).

There is no evidence in the record suggesting that Shah's termination was motivated by his protected activity. Shah engaged in many forms of protected activity over the course of many years: (1) he informally and formally complained to management about discrimination and harassment between 2008 and 2018; (2) he filed EEOC complaints in 2013 and 2016; (3) he filed a federal lawsuit complaining of discrimination in 2014; and (4) he filed this lawsuit in 2017. By the time he was terminated, he had been complaining of discrimination for at least 12 years, and this litigation had been pending for three. Instead, the undisputed record shows that Shah was traveling across the U.S. and internationally at multiple times when he was being paid to work as a reserve flight attendant for the Philadelphia base. Shah's conclusory arguments on appeal that his termination was somehow based on his prior complaints of

8

discrimination are not supported by record evidence.[3]

Accordingly, we will affirm the judgment of the District Court.[4]

---

[3] Because we conclude that Shah's NJLAD claims are meritless, we need not address the District Court's alternate conclusion that the NJLAD did not apply because New Jersey was not his place of employment.

[4] Shah's motion to exceed the page and word limits in his reply brief is granted.