**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2815
_____

GWENDOLYN RICE,
                                        Appellant

v.

SECRETARY UNITED STATES NAVY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2:23-cv-00416)
District Judge: Honorable John R. Padova
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on October 24, 2025

Before: PORTER, FREEMAN, and CHUNG, *Circuit Judges*

(Opinion filed: December 22, 2025)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**FREEMAN**, *Circuit Judge*.

Gwendolyn Rice sued her former employer, the Navy, for age and disability discrimination and retaliation. The District Court granted summary judgment in favor of the Navy on each count. For the reasons that follow, we will affirm.

**I**

Rice was a civilian employed by the Navy for forty years until her retirement in August 2019. She suffers from several health conditions, including chronic neck and back pain, fibromyalgia, glaucoma, arthritis, carpal tunnel syndrome, high blood pressure, and anxiety. She began reporting her health conditions to the Navy in 2000 when her chronic pain started.

From January 2016 through her retirement, Rice's first-line supervisor was Kevin Gallagher. When Gallagher took on his supervisory role, he began reviewing the position descriptions (PDs) of each of his supervisees. He told Rice in 2016 that her PD did not describe her actual duties and suggested rewriting it. Rice opposed a rewrite, and Gallagher did not insist upon it for over two years. Meanwhile, Gallagher rewrote the PDs for all his other supervisees. The only exception was a new hire who had the standard PD for trainees.

In early 2017, Rice complained to her supervisors that individuals in the workplace were stealing from her and disrupting her workstation in an effort to force her to retire. Rice's second-line supervisor, Ricky Neason, investigated the complaint and found it unsubstantiated. Neason, Gallagher, and Rice met in March 2017 to discuss the

2

results of the investigation. Gallagher then documented the meeting in an email to Neason in which he expressed concern about Rice's work performance, stating that Rice is "often confused, very disorganized" and "not given complex tasks to perform because she is, in [Gallagher's] opinion, not up to the level of performance required." Supp. App. 376.

Gallagher claims that he spoke with Rice several times in 2016 and 2017 about how she needed to improve her performance, but he did not document those conversations. In any event, Gallagher rated Rice's performance as acceptable or satisfactory during her periodic performance reviews from 2016 through 2018.[1]

In August 2018, Neason directed Gallagher to rewrite Rice's PD to comply with a human resources audit. When Rice learned the rewrite was underway, she emailed Neason and her third-line supervisor, Clare Filipkowski, and said the rewrite showed "[d]isparity of [t]reatment" by Gallagher. Supp. App. 488. Despite Rice's protestation, Gallagher continued to work with human resources personnel on the rewrite for several months.

Rice alleges that, between 2018 and 2019, Gallagher encouraged other employees to "project negative behaviors" toward her by, for instance, not inviting her to join their lunch outings. Supp. App. 403. Additionally, on one occasion Rice overheard Gallagher say "that bitch" right after she sent an email complaining about him. Supp. App. 465.

---

[1] Between 2016 and 2018, Gallagher used two different ratings systems for Rice's performance reviews. One required a rating of either acceptable or unacceptable, and the other used a scale of outstanding, satisfactory, or unsatisfactory.

3

On January 4, 2019, Rice encountered Gallagher in his office, became upset, and began yelling at him. Filipkowski separated Rice and Gallagher and attempted to calm Rice down. When Rice continued yelling, Filipkowski concluded that Rice was being insubordinate and advocated for a formal reprimand letter. Rather than issuing a reprimand letter, however, Neason gave Rice a verbal warning. Later that month, Gallagher rated Rice "Fully Successful" on every performance element in her review, though he included narratives about how Rice needed improvement as to each element.[2]

In March 2019, Rice broke her ankle, and Gallagher granted her request to telework full time. The next day, Gallagher, and Neason had a phone meeting with Rice to discuss her late assignments. During that meeting, Gallagher told Rice that she would fail her next performance evaluation if she did not keep him updated on her work status. Gallagher's loud comments exacerbated Rice's medical conditions. At the end of March, Gallagher rated Rice's performance "Satisfactory" and again provided a narrative about deficiencies.[3]

On April 10, 2019, Gallagher and Neason told Rice by telephone that she was not productive. Because of that criticism, Rice suffered stress and extreme pain and sought treatment at an emergency room. That same day, she contacted an Equal Employment Opportunity (EEO) counselor and began looking into retirement. At the time, Rice was sixty years old. The next day, Rice emailed Gallagher and Neason to say that they had

---

[2] This review system used a scale of Outstanding, Fully Successful, Unacceptable, or Not Rated.

[3] This rating was on a scale of Outstanding, Satisfactory, or Unsatisfactory.

mistreated her, and she informed them that she would seek Family and Medical Leave Act (FMLA) leave. Later that month, Gallagher further documented concerns about Rice's performance.

On May 1, 2019, a human resources specialist finalized Rice's revised PD and sent it to Neason. Shortly before that date, Rice had requested an FMLA form. When Neason got the revised PD on May 1, he directed Gallagher to attach the revised PD to the FMLA form and send both to Rice. Gallagher complied.

Rice was out on sick leave, followed by FMLA leave, for all of May and into June 2019. She returned to full-time telework on June 11, and on June 24 she met with Gallagher and Neason to discuss her revised PD. Asserting that the revised PD included some new duties and some duties that Rice had not performed in years, she requested training on the revised PD. Gallagher and Neason denied the request, saying Rice did not need training because she had been performing those duties for years.

Immediately after the June 24 meeting with Rice, an EEO representative contacted Gallagher to discuss concerns raised by Rice. The EEO representative interviewed Gallagher later that day and explained that Rice complained about the revised PD and the denial of her request for training. Two days later, on June 26, Gallagher issued Rice a Notice of Unacceptable Performance (NUP) stating that she would not pass her next performance evaluation if her performance did not improve. Rice's union representative promptly contacted Gallagher about the NUP, which Gallagher rescinded one or two days after he issued it.

5

On July 22, 2019, Rice filed a formal EEO complaint of age, sex, and disability discrimination and retaliation. She also informed her supervisors that she would retire on August 2, 2019. She retired on that date, as announced.

In September 2022, an administrative judge found in favor of the Navy on all of Rice's EEO claims, and Rice filed this lawsuit in February 2023. The case proceeded to discovery on Rice's claims of disability discrimination and retaliation under the Rehabilitation Act, 29 U.S.C. § 701 et seq., and age discrimination and retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq.[4] The District Court granted summary judgment for the Navy on all claims, and Rice timely appealed.

## I[5]

We exercise plenary review of orders granting or denying summary judgment, applying the same standard used by district courts. *AstraZeneca Pharms. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 116, 122 (3d Cir. 2025). A court may grant summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] At the pleadings stage, the District Court dismissed Rice's claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Rice does not challenge that order on appeal.

[5] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

6

## A

Because Rice has not presented direct evidence of disability or age discrimination, her claims are assessed under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Wishkin v. Potter*, 476 F.3d 180, 184–85 (3d Cir. 2007) (applying that framework to discrimination claims under the Rehabilitation Act); *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam) (same for discrimination claims under the ADEA). Under that framework, a plaintiff first needs to make a prima facie case of discrimination. *Sarullo*, 352 F.3d at 797. If she does so, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its challenged employment action. *Id.* (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer does that, the burden then shifts back to the plaintiff to show that the employer's proffered reasons were merely pretext for discrimination. *Id.*

A plaintiff makes a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *Id.*

The District Court determined that Rice failed to make a prima facie case of disability or age discrimination because she failed to show that she suffered an adverse

employment action.[6]  We agree.  Moreover, even if there was an adverse employment action, it did not occur under circumstances giving rise to an inference of discrimination.

To demonstrate an adverse employment action, a plaintiff "must show some harm respecting an identifiable term or condition of employment."  *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024).  Examples include changes to employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a change in benefits.  *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (collecting pre-*Muldrow* cases).

In her appellate brief, Rice includes a laundry list of Gallagher's acts that she believes were discriminatory: berating and making inappropriate comments about Rice, encouraging other employees to engage in negative behavior toward Rice, revising her PD, notifying her of the revised PD by attaching it to FMLA documents, denying her request for training on the revised PD, and issuing the NUP.  She offers no argument as to why any of these acts constitute adverse employment actions.  Even if any such argument is not forfeited, it is unavailing as to most items on this list.

No harm resulted from the denial of training, the method Gallagher used to notify Rice of her revised PD, or the NUP (which Gallagher quickly rescinded).  Nor did the

---

[6] Rice argues that the District Court improperly resolved factual disputes that could have led a reasonable jury to find that Gallagher's actions were motivated by discriminatory intent.  Not so; the District Court credited Rice's version of events when it determined there was no adverse employment action.

inappropriate comments and other negative behavior worsen any identifiable term or condition of Rice's employment.

That leaves the actual revision of the PD. Reassignment with different responsibilities can constitute an adverse employment action. *See Burlington Indus.*, 524 U.S. at 761. But even assuming that the Navy's revision of Rice's PD was an adverse employment action, Rice has not satisfied the fourth requirement for a prima facie case: demonstrating circumstances giving rise to an inference of discrimination. Nothing about the context of the revision suggests animus. Gallagher suggested revising Rice's PD in 2016, and he deferred the revision at Rice's request for over two years. During those years, he revised the PD of all his other non-trainee supervisees. He only revised Rice's PD after being required to do so to comply with an audit.

Absent a prima facie case of discrimination, the District Court correctly granted summary judgment for the Navy on Rice's discrimination claims.

B

To make a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, the employer took an adverse employment action against her, and there was a causal connection between the protected activity and the adverse action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). The District Court determined that Rice did not present evidence of a causal connection to support a prima facie case.

On appeal, Rice argues that the temporal proximity between her complaint to her supervisors on April 10, 2019, and the NUP on June 26, 2019, establishes a causal

9

connection where Gallagher had "*never . . .* documented any prior performance issues." Opening Br. 22. Yet the record contains much documentation of Gallagher's concern with Rice's performance before June 26, 2019. In any event, we need not decide whether temporal proximity alone supported a causal link between Rice's complaint and the NUP. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (holding that "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation"). Even assuming that she made a prima facie case, Rice's appeal fails because she makes no argument and adduces no evidence in support of Step 3 of the *McDonnell Douglas* scheme: pretext.

Because the Navy asserted nondiscriminatory reasons for issuing the NUP, Rice can withstand summary judgment only by showing those reasons were pretextual. *See Sarullo*, 352 F.3d at 797. Yet she makes no effort to do so. In her appellate brief, she addresses retaliation in two paragraphs, only arguing that she made a prima facie case.[7] Thus, she has forfeited a challenge to the grant of summary judgment on her retaliation claims. *See In re Wettach*, 811 F.3d 99, 115 (3d Cir. 2016).

\* \* \*

For the foregoing reasons, we will affirm the District Court's summary judgment order.

---

[7] Her two-paragraph argument to the District Court likewise addressed only the prima facie case.